Marie M. **FAISON, et al., Plaintiffs,**

v.

**SEX CRIMES UNIT OF PHILADELPHIA, et al., Defendants.**

Civ. A. No. 91–6601.

United States District Court, E.D. Pennsylvania.

Feb. 24, 1994.

---

Edward C. German, D. Selaine Belver, German, Gallagher & Murtagh, Philadelphia, PA, for Faison.

Marie M. Faison, pro se.

Lorray Brown, Deputy City Sol., Philadelphia, PA, for Philadelphia Dept of Human Service Sex Crime Unit of Philadelphia, Goldberg, and Pogonyi.

D. Selaine Belver, German, Gallagher & Murtagh, Philadelphia, PA, for Porterfield and Wiley.

## MEMORANDUM

DuBOIS, District Judge.

Currently before the Court is the Motion for Summary Judgment filed by Defendants Philadelphia Department of Human Services ("DHS"), Philadelphia Sex Crimes Unit ("SCU"), Miklos Pogonyi, and Pamela Gofberg (collectively, "the City defendants"). For the following reasons, the City defendants' Motion for Summary Judgment with respect to plaintiffs' request for reinstatement of Marie Faison's parental rights, which will be treated as a Motion to Dismiss for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1), will be granted. In all other respects, the City defendants' Motion for Summary Judgment will be denied.

## I. BACKGROUND

Plaintiff Marie Faison is the natural mother of minor plaintiffs Felicia Marie Porterfield and Ebony Sictoria Wiley. On September 27, 1984, the DHS placed Porterfield and Wiley in foster care after discovering that Faison had abandoned them. Porterfield and Wiley were returned to Faison's custody in the middle of October, 1984.[1]

On October 15, 1984, Faison filed a complaint with the DHS alleging that both Porterfield and Wiley had been sexually assaulted while in foster care.[2] The SCU investigated the alleged sexual assaults and concluded in February, 1985 that the children had not been assaulted while in foster care, but rather had been assaulted by their brother after being returned to Faison's custody.

On January 31, 1985, prior to the completion of the SCU's investigation of the alleged sexual assaults, the DHS returned Porterfield and Wiley to foster care after discovering that Faison had again abandoned them. Initially, the DHS returned Porterfield and Wiley to foster care with the goal of reuniting them with Faison. On April 18, 1986, however, the DHS changed the placement goal for Porterfield and Wiley from reunification to adoption. Faison alleges that, at the time the DHS changed its placement goal, she was informed by Pamela Gofberg, the DHS employee in charge of her children's case, that she could no longer visit her children because her visitation rights had been suspended.

Porterfield and Wiley remained in foster care through September, 1988, when Miklos Pogonyi became the primary DHS employee handling their case.[3] By this time, the DHS' placement goal for Porterfield and Wiley had been changed back to reunification with plaintiff. On January 25, 1989, however, the DHS changed its placement goal again from reunification to adoption due to Faison's failure to visit her children. Subsequently, on November 21, 1991, a state custody hearing was held. As a result of that hearing, Faison's parental rights with respect to Porterfield and Wiley were terminated.

On July 21, 1992, Faison filed a Second Amended Complaint[4] against the City defendants[5] on behalf of herself and her two children, Porterfield and Wiley, asserting claims under 42 U.S.C. § 1983 and state law. The Second Amended Complaint alleges that 1) Porterfield and Wiley were sexually assaulted while in the custody of the DHS; 2) the SCU, the DHS, and Pogonyi failed to investigate adequately the alleged sexual abuse of Porterfield and Wiley; and, 3) the DHS and Gofberg improperly informed Faison in 1986 that she could no longer visit her children, thereby causing the termination of her parental rights in 1991. The Second Amended Complaint further alleges that the City defendants' conduct violated plaintiffs'

---

1. There is a factual dispute as to when the children were released from foster care and returned to Faison. The City defendants contend that the children were released on October 12, 1984, while Faison contends that the children were not released until October 15, 1984.

2. Although it is undisputed that Faison reported to the DHS on October 15, 1984 that Wiley had been sexually assaulted while in foster care, the parties dispute whether Faison also reported to the DHS at that time that Porterfield had been sexually assaulted while in foster care.

3. The parties dispute the date Miklos Pogonyi first became involved with Porterfield and Wiley's case. While the City defendants allege that Pogonyi did not begin handling the case until September, 1988, plaintiffs assert that Pogonyi was involved as early as November, 1983.

4. Plaintiffs' initial pro se complaint, filed *in forma pauperis* on September 23, 1991, was dismissed as frivolous by this Court's Order of November 14, 1991. Plaintiffs filed an amended pro se complaint on December 12, 1991, which, after appointing counsel, this Court dismissed without prejudice for failure to state a claim by Order dated June 22, 1992.

5. Also named as defendants in the Second Amended Complaint are the Women's Christian Alliance Placing Agency and its employees, Anna White, Martha Roundtree, and Mabel Johnson, as well as the Child Advocate Unit and its employee, Charles McKinney. The Child Advocate Unit and Charles McKinney have subsequently been dismissed from the case by agreement of the parties.

federal and state constitutional right to due process, constituted negligence, and resulted in a breach of contract, and seeks compensatory and punitive damages, and a reinstatement of Faison's parental rights with respect to Porterfield and Wiley.

On May 21, 1992, the City defendants filed a Motion to Dismiss the Second Amended Complaint which was denied without prejudice by this Court's order of November 16, 1992. On September 27, 1993, the City defendants filed the Motion for Summary Judgment currently before the Court.

## II. DISCUSSION

Under Rule 56, a party is entitled to summary judgment with respect to all or part of a claim if "there is no genuine issue as to any material fact" and the party is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To establish the existence of a genuine issue of material fact, the nonmoving party "must go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)).

In the instant case, the City defendants assert the following grounds for summary judgment: 1) Faison lacks standing to assert claims on behalf of Porterfield and Wiley; 2) plaintiffs' claims relating to the sexual assault of Porterfield and Wiley are barred by the statute of limitations; 3) the Court lacks jurisdiction over plaintiffs' request for a reinstatement of Faison's parental rights; 4) plaintiffs' claim that Faison's parental rights were improperly terminated is barred on the grounds of collateral estoppel; and 5) plaintiffs have failed to establish a violation of their constitutional right to due process.

### A. Standing

█ The City defendants argue that Faison lacks standing to assert claims on behalf of Porterfield and Wiley because her rights to her children were terminated on November 21, 1991, following the state court custody hearing. In support of their argument,

the City defendants rely on the Third Circuit's decision in *Davis v. Thornburgh*, 903 F.2d 212 (3d Cir.), *cert. denied*, 498 U.S. 970, 111 S.Ct. 436, 112 L.Ed.2d 420 (1990).

In *Davis*, the plaintiff signed a form prepared in accordance with the requirements of the Pennsylvania Adoption Act giving consent to the adoption of her daughter, Angela. Shortly after the proposed adoptive parents took custody of Angela, however, the plaintiff attempted to revoke her consent. The proposed adoptive parents brought suit under the Adoption Act to terminate the plaintiff's parental rights involuntarily and were awarded full custody. After exhausting her state appeals, the plaintiff filed suit in federal court seeking visitation rights to Angela on the ground that the Adoption Act's consent procedure violated due process. The Third Circuit rejected the plaintiff's claim, however, concluding that, because the plaintiff's rights to Angela had been lawfully terminated, the plaintiff had no interest with respect to Angela and therefore lacked standing to seek visitation rights. *Id.* at 220.

The instant case is distinguishable from *Davis*. In *Davis*, plaintiff was not challenging the validity of the specific proceedings that resulted in the termination of her parental rights. The *Davis* court expressly noted that the plaintiff's challenge to the Adoption Act's consent procedure was collateral to, and independent of, the involuntary termination proceedings that ultimately divested plaintiff of her parental rights. *Id.* at 220 & n. 16. By contrast, plaintiffs' in the instant case are challenging the specific state court order terminating Faison's parental rights. Plaintiffs assert that this order is invalid due to the City defendants' unconstitutional conduct in informing Faison in 1986 that her parental rights had been suspended. In light of this claim, the Court concludes that the state court order is not entitled to conclusive effect, and therefore, Faison has standing to assert claims on behalf of her children.

The Court's conclusion finds support in Judge Becker's dissenting opinion in *Davis*. Judge Becker disagreed with the majority's conclusion that the plaintiff's challenge to the Adoption Act's consent procedure was collat-

eral to the prior state court ruling divesting her of her parental privileges. Judge Becker argued that the validity of the Adoption Act's consent procedure was directly connected to the plaintiff's federal action, because without the plaintiff's original consent to award custody of Angela to the proposed adoptive parents the latter would have lacked standing to bring their involuntary termination suit.

Having determined that the plaintiff's federal suit was connected to the termination of her parental rights, Judge Becker concluded that the plaintiff had standing to challenge the constitutionality of the Adoption Act's consent procedure. Employing the same analysis adopted by this Court, Judge Becker reasoned that, where a parent is challenging the very proceeding which resulted in the termination of the parent's parental privileges, the parent cannot be denied standing to assert the interests of the parent's child. *Id.* at 228.

Notwithstanding the Court's conclusion that Faison has standing to bring suit on behalf of Porterfield and Wiley as their legal guardian, the Court is concerned that Faison's interests in the current suit may, in some respects, be potentially adverse to those of Porterfield and Wiley. As an example, although Faison may desire a reinstatement of her parental rights to the custody and care of Porterfield and Wiley, the latter may be better served by a different custodial arrangement. Accordingly, the Court will appoint a guardian ad litem for Porterfield and Wiley pursuant to Federal Rule of Civil Procedure 17(c), which authorizes the Court to "appoint a guardian ad litem … or … make such other order as it deems proper for the protection of [an] infant or incompetent person." [6]

The guardian ad litem appointed by the Court will not displace Faison as the legal representative of Porterfield and Wiley. Rather, the guardian ad litem will serve only to alert the Court to any potential conflicts that may exist between Faison's interests and those of the children. Such an arrangement is in keeping with the Court's authority under Rule 17(c) to fashion an appropriate order for the protection of a minor child, and will enable Faison to continue representing Porterfield and Wiley in the instant suit while ensuring that the children's interests are adequately protected. *See In re Air Crash Disaster Near Saigon,* 476 F.Supp. 521, 525 (D.C.D.C.1979) (concluding that potential conflict of interest between surviving orphans and non-profit organization representing orphans in personal injury suit warranted appointment of guardian ad litem who would "be alert to recognize actual and potential conflicts … without displacing" non-profit organization as orphans' legal representative); *Horacek v. Exon,* 357 F.Supp. 71, 74 (D.Neb.1973) (appointing guardian ad litem for mentally retarded children confined in state home "not [to] displace the [children's] parents as representatives" but "to recognize potential and actual differences in positions asserted by the parents and positions that need to be asserted on behalf of the [children]"); *cf. Garrick v. Weaver,* 888 F.2d 687, 692–93 (10th Cir.1989) (concluding that mother of minor children and guardian ad litem appointed for minor children could not serve simultaneously as children's legal representative).

## B. Statute of Limitations

The City defendants argue that plaintiffs' § 1983 claims relating to the sexual assault of Porterfield and Wiley, and the City defendants' failure to investigate adequately these allegations, are barred by the statute of limitations. According to the City defendants, both of these causes of action accrued no later than February, 1985, when the SCU completed its investigation of the allegations of sexual assault. Thus, plaintiffs' claims are barred since the relevant statute of limita-

---

**6.** Rule 17(c) provides in full:
Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. An infant or incompetent person who does not have a duly appointed representative may sue by next friend or by a guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person.

tions is two years and plaintiffs' original complaint was not filed until September 23, 1991.

■ It is well-established that claims brought under 42 U.S.C. § 1983 are subject to the state statute of limitations governing personal injury actions. *See, e.g., Owens v. Okure,* 488 U.S. 235, 236, 109 S.Ct. 573, 574, 102 L.Ed.2d 594 (1989); *Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985). In Pennsylvania, the statute of limitations for personal injury actions is two years. 42 Pa.C.S.A. § 5524; *Bougher v. University of Pittsburgh,* 882 F.2d 74, 78 (3d Cir.1989). However, there is an exception to the two-year limitations period for claims of a minor. For such claims, the statute of limitations does not begin to run until the minor reaches the age of majority. 42 Pa.C.S.A. § 5533(b).[7]

In the instant case, plaintiffs' claims with respect to the alleged sexual assault of Porterfield and Wiley, and the City defendants' failure to investigate adequately these allegations, are being asserted solely on behalf of Porterfield and Wiley, both of whom are minors. Plaintiffs' Response to City Defendants' Motion for Summary Judgment at 5. Accordingly, these claims are not time barred since the statute of limitations has yet to commence running. *Cf. Hathi v. Krewston Park Apartments,* 385 Pa.Super. 613, 561 A.2d 1261, 1262–63 (1989) (concluding that claims asserted by parents of injured child for recovery of medical expenses and lost services more than two years after accident were time barred but that statute of limitations had not commenced to run with respect to personal injury claims asserted on behalf of minor child).

## C. Jurisdiction

■ In connection with plaintiffs' § 1983 claim that the City defendants' improperly informed Faison that her parental rights had been suspended in 1986, thereby resulting in the 1991 state court termination order, plaintiffs seek, in addition to monetary damages, an order reinstating Faison's parental rights to the custody and care of Porterfield and Wiley. The City defendants argue that the Court lacks jurisdiction over plaintiffs' request for reinstatement of Faison's parental rights based on the domestic relations exception to federal jurisdiction.

The power of a federal court to issue child custody decrees was recently addressed by the Supreme Court in *Ankenbrandt v. Richards,* ── U.S. ──, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). In that case, the district court dismissed the plaintiff's damage suit against her former husband for the alleged sexual assault of their daughter on the grounds that the suit was barred by the domestic relations exception to federal jurisdiction. The Fifth Circuit affirmed the district court's order of dismissal but the Supreme Court reversed. Although the Supreme Court acknowledged the existence of a domestic relations exception to federal jurisdiction, it held that this exception did not preclude the federal courts from hearing damage suits stemming from domestic relations issues. Rather, the Court ruled that the domestic relations exception only "divests the federal courts of power to issue divorce, alimony, and child custody decrees," matters which the state courts "are more eminently suited" to decide, and over which the state courts possesses "greater expertise," than the federal courts. *Id.* at 2215.

In light of *Ankenbrandt,* the Court concludes that it is without power to issue an order reinstating Faison's parental rights to the custody and care of Porterfield and Wiley. Such an order would constitute the very type of child custody decree that is beyond the authority of the federal courts. Accordingly, the Court will dismiss plaintiffs' particular request for injunctive relief for lack of jurisdiction.[8]

---

7. 42 Pa.C.S.A. § 5533(b) provides:

> **Infancy**—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining majority as is allowed to others by the provisions of this subchapter. As used in this subsection the term "minor" shall mean any individual who has not yet attained the age of 18.

8. The City defendants' incorrectly request the Court to grant summary judgment with respect

Although the Court is precluded from granting plaintiffs' particular request for injunctive relief, the Court is not foreclosed from awarding plaintiffs some form of injunctive relief should they prevail on the merits of their claims. It is well-established that, where federally secured rights are invaded, the federal courts have broad authority to tailor their remedies to grant the necessary relief. *See Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946); *Davis,* 903 F.2d at 230 (Becker, J., dissenting); *Johnson v. Capital City Lodge No. 74,* 477 F.2d 601, 603 (4th Cir.1973); *Donahue v. Staunton,* 471 F.2d 475, 483 (7th Cir.1972), *cert. denied,* 410 U.S. 955, 93 S.Ct. 1419, 35 L.Ed.2d 687 (1973); *Green v. City of Montgomery,* 792 F.Supp. 1238, 1241 (M.D.Ala. 1992).

In the instant case, assuming *arguendo* that plaintiffs prevail on the merits of their claims,[9] an order requiring the state court to hold a new termination hearing might serve as an appropriate substitute for plaintiffs' request for reinstatement of Faison's parental rights. Such an order would afford plaintiffs' an opportunity to challenge the City defendants' alleged misconduct in informing Faison in 1986 that her right to visit her children had been suspended, and the propriety of any termination order based upon Faison's subsequent failure to visit her children. At the same time, such an order would comply with the purposes behind the domestic relations exception to federal jurisdiction by allowing the final determination of the question of the custody of Porterfield and Wiley to be handled by the state courts.

The Court's conclusion that plaintiffs' might be entitled to a new state court termination hearing should they prevail on the merits of their claims finds support in Judge Becker's dissenting opinion in *Davis.* After

determining that the majority wrongly decided that the plaintiff lacked standing because her rights to her daughter had been terminated, Judge Becker went on to consider whether the plaintiff nevertheless lacked standing because the court was without power to grant her specific request for visitation rights. Judge Becker proceeded to reject this latter argument, determining that the plaintiff could be afforded alternative relief in the form of a new state court adoption hearing. Because such a remedy would provide the plaintiff with tangible relief, Judge Becker concluded plaintiff had standing to assert her constitutional claims. *Davis,* 903 F.2d at 230.[10]

## D. Collateral Estoppel

The City defendants argue that the principle of collateral estoppel bars plaintiffs' claim that the termination of Faison's parental rights violated her right to due process. According to the City defendants, this issue was already decided in the state court termination proceeding and thus may not be relitigated.

■ In actions brought under 42 U.S.C. § 1983, the federal courts must give a state court judgment the same preclusive effect that the judgment would be given by the courts of the state in which the judgment was rendered. *See* 28 U.S.C. § 1738; *Migra v. Warren City Sch. Dist.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Under Pennsylvania law, the doctrine of collateral estoppel applies if the following elements are met:

(1) the issue decided in the prior action is identical to the one presented in the later action;

to plaintiffs' request for reinstatement of Faison's parental rights. The Court may not enter summary judgment for a defendant when it lacks jurisdiction over an action or any part thereof. Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 2713, at 611. Where the Court is without jurisdiction, the Court's only recourse is to enter an order of dismissal. *Id.* Accordingly, having determined that the Court lacks jurisdiction over plaintiffs' request for reinstatement of Faison's parental

rights, the Court will order that this request for relief be dismissed under Federal Rule of Civil Procedure 12(b)(1).

9. The Court expresses no opinion on the merits of plaintiffs' claims.

10. Since the *Davis* majority concluded that plaintiff lacked standing due to the termination of her parental rights, it did not reach this second issue concerning plaintiff's standing.

(2) there was a final judgment on the merits;

(3) the party against whom the plea is asserted was a party or in privity with a party in the prior action;

(4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and

(5) the determination in the prior proceeding was essential to the judgment.

*City of Pittsburgh v. Zoning Board of Adjustment,* 522 Pa. 44, 559 A.2d 896, 901 (1989). Since collateral estoppel is an affirmative defense, *see* Fed.R.Civ.P. 8(c), it is the City defendants' burden to prove that the foregoing elements have been satisfied. *McLaughlin v. Pernsley,* 654 F.Supp. 1567, 1573 (E.D.Pa.1987).

■ Here, the City defendants have presented no evidence that the issue of whether the City defendants violated Faison's right to due process by allegedly informing her in 1986 that she could not visit her children was actually raised and considered in the state court termination proceeding. Such a result is not surprising, since family courts in Pennsylvania are generally without jurisdiction to decide constitutional matters. Rather, in child custody cases, the family courts are permitted only to determine the fitness of the parent. *Davis,* 903 F.2d at 229 (Becker, J., dissenting). The Court concludes, therefore, that the City defendants have failed to establish that plaintiffs' challenge to the constitutionality of the state court termination proceeding is barred on the grounds of collateral estoppel. *McLaughlin,* 654 F.Supp. at 1577 (prior state court action denying foster parents' petition for return of foster child did not bar federal suit challenging constitutionality of state agency's removal of foster child from foster parents' home); *cf. Gardner v. Parson,* 874 F.2d 131, 142 (3d Cir.1989) (plaintiff's § 1983 claim alleging that removal of minor child by Delaware

Child Protection Services violated procedural due process was collaterally estopped where record demonstrated that Delaware Family Court specifically determined that plaintiff had adequate notice of agency's intentions).

## E. Constitutional Violation

Finally, the City defendants seek summary judgment on the ground that plaintiffs have failed to establish any violation of their constitutional right to due process. The City defendants advance two arguments in this regard.

First, the City defendants argue that, as a legal matter, their failure to investigate the allegations of sexual assault cannot establish a due process violation because they had no duty to undertake such an investigation. To support this argument, the City defendants cite to 55 Pa.Code § 3490.81(a), which states that "when the suspected [sexual] abuse has been committed by an agent of the county agency, the [State Department of Public Welfare] shall investigate the report." The City defendants argue that foster parents are agents of the county, and therefore, the duty to investigate plaintiffs' allegations of sexual assault belonged exclusively to the state.

■ The City defendants' argument overlooks the responsibilities invested in them by 55 Pa.Code § 3130.31(4). This provision provides that "[t]he county agency [in charge of child social services] shall be organized and staffed to ensure the ... investigation of reports of suspected child abuse." [11] In light of § 3130.31(4), the Court concludes that § 3490.81(a) operates to shift the duty to the state to investigate an allegation of sexual abuse only after it is determined by the local authorities that such alleged abuse was committed by an agent of the county. Until such a determination is made, the responsibility for investigating an allegation of abuse resides with the local authorities under § 3130.31(4).

---

11. Section 3130(4) provides in full:
The county agency shall be organized and staffed to ensure the following:

(4) Investigation of reports of suspected child abuse and services provided to abused children

and their families under Chapter 3490 (relating to child protective services—child abuse).

■ In the instant case, the perpetrator of the alleged sexual assault against Porterfield and Wiley was unknown at the time these allegations were initially brought to the attention of the City defendants. Accordingly, the Court finds that under § 3130.31(4) the City defendants were responsible for conducting an investigation of these allegations, at least until such time as they determined that the assaults were committed while Felicia and Ebony were in foster care. Such a finding is consistent with the City defendants' own apparent understanding of their statutory obligations, at least prior to the institution of this suit, since it is undisputed that the City defendants actually conducted an investigation of the allegations of sexual abuse reported by plaintiffs. Accordingly, the Court finds no merit in the City defendants' claim that they cannot be held liable for their alleged failure to investigate adequately the sexual assaults against Porterfield and Wiley because they had no duty to undertake such an investigation.

The City defendants also argue that they are entitled to summary judgment because plaintiffs have failed to set forth sufficient facts demonstrating that the City defendants violated plaintiffs' constitutional right to due process.[12] After reviewing Faison's affidavit and her answers to interrogatories, however, the Court finds that plaintiffs have demonstrated the existence of a genuine issue of material fact with respect to their constitutional claims.[13] Accordingly, the Court concludes that the City defendants have failed to establish their right to summary judgment.

**12.** Specifically, the City defendants argue that plaintiffs have failed to set forth any facts demonstrating: 1) that Porterfield was sexually assaulted; 2) that the assault of Wiley occurred while she was in the custody of the City defendants; 3) that the City failed to conduct a proper investigation; 4) that Miklos Pogonyi had contact with plaintiff during the time of the alleged violations; and, 5) that plaintiff was ever informed that her parental rights had been terminated prior to the November 21, 1991 state termination proceeding.

**13.** Faison made the following statements in her affidavit and answers to interrogatories in support of plaintiffs' claims: 1) that Porterfield told her when she was bathing Porterfield that Port-

## III. CONCLUSION

The City defendants' Motion for Summary Judgment with respect to plaintiffs' request for reinstatement of Faison's parental rights will be treated as a Motion to Dismiss for lack of subject matter jurisdiction and will be granted. Although the Court is without jurisdiction to grant plaintiffs' particular request for injunctive relief, the Court may provide plaintiffs' with an alternate form of injunctive relief such as a new state court termination of parental rights proceeding if it determines such relief is warranted. In all respects other than plaintiffs' request for reinstatement of Faison's parental rights, the City defendants' Motion for Summary Judgment will be denied.

An appropriate order follows.

## *ORDER*

**AND NOW**, to wit, this 24th day of February, 1993, upon consideration of the Motion of defendants, Philadelphia Department of Human Services, Philadelphia Sex Crimes Unit, Miklos Pogonyi, and Pamela Gofberg, for Summary Judgment (Document No. 47), Plaintiffs' Response to City Defendant's Motion for Summary Judgment (Document No. 49), Reply of the City Defendants to Plaintiffs' Response to the City Defendants' Motion for Summary Judgment (Document No. 51), and Supplement to Plaintiffs' Response to City Defendants' Motion for Summary Judgment (Document No. 53), and for the reasons set forth in the Memorandum accompanying this Order, **IT IS ORDERED** as follows:

erfield had been sexually assaulted by Porterfield's foster brother, Interrogatory at ¶¶ 88, 90; 2) that Porterfield and Wiley were not returned to her until October 15, 1984, two days after they had been sexually assaulted, Affidavit at ¶ 3; 3) that the City told her after it completed its investigation that it had incorrectly identified her son as the perpetrator of the alleged sexual assaults, Affidavit at ¶ 5; 4) that her first contact with Miklos Pogonyi occurred on November 23, 1983 and that this contact continued through 1991, Interrogatory at ¶¶ 19–22; and 5) that Pamela Gofberg informed her in 1986 that her right to visit with her children had been suspended, Affidavit at ¶ 6.

1) Defendants' Motion for Summary Judgment with respect to plaintiffs' request for reinstatement of Marie Faison's parental rights, which will be treated as a Motion to Dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), is **GRANTED** and plaintiffs' request for reinstatement of Marie Faison's parental rights is **DISMISSED** for lack of subject matter jurisdiction;

2) Defendants' Motion for Summary Judgment is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that on or before March 10, 1994 the parties shall jointly submit to the Court in writing the names and addresses of three persons who are qualified and willing to serve as a guardian ad litem for Felicia Marie Porterfield and Ebony Sictoria Wiley with a brief description of the qualifications of each such person.