**TRANSWAY CORPORATION, a Hawaii Corporation, Plaintiff,**

v.

**HAWAII TEAMSTERS AND ALLIED WORKERS, LOCAL 996, IBT, Defendant,**

**Retail & Clerks Union Local 480, AFL–CIO, Intervenor-Defendant.**

**Civ. No. 76–0013.**

United States District Court, D. Hawaii.

Feb. 12, 1976.

Robert S. Katz, Torkildson, Katz & Conahan, Honolulu, Hawaii, for plaintiff.

John Desha, Honolulu, Hawaii, for defendant.

Barry S. Jellison, San Francisco, Cal., for intervenor-defendant.

## SUPPLEMENTAL MEMORANDUM DECISION AND OPINION DENYING PLAINTIFF'S MOTIONS FOR INJUNCTION PENDING APPEAL AND PRELIMINARY INJUNCTION

WONG, District Judge.

On February 6, 1976, this Court denied plaintiff's motions for a preliminary injunction and for an injunction pending appeal (made pursuant to Fed.R.Civ.P. Rule 65(c)). As for the order denying the Motion for Preliminary Injunction, the Court did not issue an opinion explaining the reasons for its decision. This memorandum opinion shall briefly set forth the reasons for the denial of plaintiff's motions for preliminary injunction and injunction pending appeal. This Court reserves the right to issue a subsequent memorandum further explaining its denial of the preliminary injunction.

Plaintiff's immediate concern is to appeal from this Court's denial of the Motion for Injunction Pending Appeal. Plaintiff has requested the Court to supplement its order of February 6, 1976 denying the motion with reasons for such denial. Under Rule 8 of the Federal Rules of Appellate Procedure, in order to appeal from this Court's denial of a motion for injunction pending appeal, plaintiff must present to the appellate court the basis for the Court's denial. In order to facilitate appeal, the following memorandum explains this Court's denial of the Motion for Injunction Pending Appeal as well as its denial of the preliminary injunction.

In essence, an injunction pending appeal should not be granted here because, after considering the briefs and hearing oral argument, the Court has ruled that the preliminary injunction, or for that matter any injunction, should not be granted.

On January 16, 1976, members of the Retail Store Employee's Union, Local 480 (Local 480), set up a picket line around the Transway (Employer) plant in support of striking members of Local 480 who are employed at Certified Corp., another Hawaii corporation. Apparently, the reason Local 480 threw a picket line around Transway is that Certified Corp., with whom Local 480 has a dispute, is so closely related to Transway that the two corporations are considered a single employer. The result of an investigation on this issue by the NLRB is set forth in a letter from NLRB Regional Director Natalie P. Allen (Region 20—San Francisco) to counsel for Transway. In that letter, the Regional Director stated:

As a result of the investigation it does not appear that further proceedings on the charge are warranted inasmuch as the investigation reveals that Certified Corporation and Transway Corporation are to be considered as a single employer for the purposes of the Act in that there appears to be a common established labor policy between the corporations. The evidence shows that John Damore is the controlling stockholder of both Certified Corporation and Transway Corporation's operations. Damore and George Madden are common officers and Madden negotiated the Teamsters contracts which set day-by-day conditions of employment. Also, it is noted that Damore has the ultimate control over both operations. *See San Francisco*

*Open Newspaper Guild (Hearst Corporation)*, 185 NLRB 303.[1]

After the picket line was set up around Transway by members of Local 480, members of the Teamsters who were employed at Transway refused to cross this picket line to work. Teamsters contended that Section 41 of the collective bargaining agreement (primary picketing clause) gave them the right to refuse to cross the picket line. Section 41 reads as follows:

> 41.1 It shall not be a violation of this agreement, and shall not be cause for discharge or disciplinary action in the event an employee refuses to enter upon any property involved in a lawful primary labor dispute, or refuses to go through or work behind any lawful primary picket line, including the lawful primary picket line of this Union, and including lawful primary picket lines at the Employer's place of business.

The collective bargaining agreement also contains a no-strike or lockout clause (Section 11) and a compulsory arbitration procedure (Section 12).

On January 16, 1976, the Employer came before this Court seeking a temporary restraining order to enjoin the Teamsters from refusing to work. Counsel for the Teamsters was not present at the hearing for the temporary restraining order although he had notice of the proceeding. Apparently, both counsel for the Teamsters and Transway felt that the dispute clearly fell within the parameters of the Supreme Court's decision in *Boys Markets, Inc. v. Retail Clerks Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), and thus the Court had jurisdiction to enjoin the refusal of the Teamsters to return to work. Either because there was no desire to oppose the temporary restraining order, or because counsel for the Teamsters believed that it would be an exercise in futility, he was not present to raise any objections as to why the temporary restraining order should issue.

At the *ex parte* hearing for the temporary restraining order, the Court was assured that the preliminary injunction would be handled in the same manner, that the parties would agree to the injunction or that the Teamsters probably would not oppose the injunction.

Plaintiff's motion for a preliminary injunction was set to be heard on January 22, 1976. No memorandum in opposition to this motion was filed by the Teamsters. On January 21, 1976, Local 480 sought to intervene in the action in opposition to the Motion for Preliminary Injunction. Since it seemed readily apparent that it was Local 480 which had a substantial interest in maintaining the rights of the Teamsters to refuse to cross Local 480's picket line and since it did not appear that counsel for the Teamsters was seeking to vigorously oppose the preliminary injunction, this Court granted Local 480 the right to intervene as a matter of right under Fed. R.Civ.P. Rule 24(a), *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967).

Following the hearing, the Court extended the temporary restraining order for ten days while deliberating on the merits of issuing the preliminary injunction. On February 6, 1976, this Court ruled that it has no jurisdiction to issue a preliminary injunction. In so doing, this Court followed the reasoning in *Amstar Corporation v. Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO*, 468 F.2d 1372 (5th Cir. 1972), and *Buffalo Forge Co. v. United Steelworkers of America, AFL–CIO*, 517 F.2d 1207 (2d Cir. 1975), and the dissenting opinion of Judge Hunter in *NAPA Pittsburgh, Inc. v. Automotive Chauffeurs, Parts and Garage Employees, Local Union No. 926*, 502 F.2d 321 (3rd Cir. 1974) (Hunter, J., and Seitz, C.

---

1. *See* letter from NLRB Regional Director Natalie P. Allen to Robert S. Katz, Esq., regarding Case No. 37–CC–151, Retail Store Employ-ee's Union, Local 480 and Retail Clerks Int'l. Association, January 28, 1976.

J., dissenting) (*en banc*), *cert. denied*, 419 U.S. 1049, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974).

■■ Similar to the reasoning applied in *Amstar* and *Buffalo Forge*, this Court interprets *Boys Markets* as giving federal courts the jurisdiction to enjoin a strike in enforcement of an express or implied no-strike clause only when the underlying issue or dispute is arbitrable. There should be no injunction if the underlying dispute is not arbitrable. *Parade Publications, Inc. v. Philadelphia*, 459 F.2d 369 (3rd Cir. 1972).

In *Boys Markets*, the Supreme Court created an exception to the Norris-La Guardia Act's prohibition against federal courts issuing injunctions. The prohibitory language of that Act states that "No court of the United States shall have jurisdiction to issue any restraining order or temporary or permanent injunction in any case involving or growing out of any labor dispute . . . ." 29 U.S.C.A. Section 104.

Since this Court finds that the dispute in this case is not arbitrable and thus the exception to the Norris-La Guardia Act as carved out by *Boys Markets* does not apply, it is the view of this Court that it has no *jurisdiction* to issue a preliminary injunction. Similarly, this Court had no jurisdiction to issue the original temporary restraining order, regardless of whether or not the Teamsters had opposed the issuance of the original temporary restraining order. *A fortiori*, this Court, or any federal court, simply has no jurisdiction to issue an injunction pending appeal.

Moreover, this Court sees no merit in any argument that the "status quo" must be preserved by an injunction pending appeal. The proper status quo here is to allow the Teamsters the right to refuse to cross Local 480's picket line. In effect, the employer has had the benefit of a twenty-day injunction which the Court has subsequently decided should not have been issued.

In returning to the grounds for denial of the preliminary injunction, this Court

agrees that the congressional policy favors arbitration and that compulsory arbitration is the kingpin of labor-management dispute resolution. In the *Steelworker Trilogy* and its progeny the Supreme Court has endorsed and expanded this congressional command in applying the "presumption of arbitrability" to disputes that arise between the union and employer. *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974); *Steelworkers v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. American Mfg. Corp.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960).

However, as made clear by Judge Hunter's dissenting opinion in *NAPA Pittsburgh*, and by the Second Circuit in *Buffalo Forge*, and by the Fifth Circuit in *Amstar*, the refusal by the Teamsters to cross the picket line is simply not a grievance over which the parties are bound to arbitrate.

As the Court stated in *Buffalo Forge* :

The strike at issue in the instant case is not over a grievance with Buffalo Forge but instead is simply a manifestation of the striking workers' deference to other employees' picket lines.

. . . . .

A strike not seeking to pressure the employer to yield on a disputed issue is not an attempt to circumvent arbitration machinery established by the collective bargaining agreement. 517 F.2d at 1210–1211.

Similarly, the Fifth Circuit in *Amstar* emphasized that:

The strike by the Chalmette employees was not "over a grievance" which the parties were contractually bound to arbitrate. Rather, the strike itself precipitated the dispute—the validity under the Union's no-strike obligation of the member employees honoring the ILA line. Were we to hold that the legality of the very strike sought to be

enjoined in the present situation constituted a sufficiently arbitrable underlying dispute for a *Boys Markets* injunction to issue, it is difficult to conceive of any strike which could not be so enjoined.

The *Boys Markets* holding was a "narrow one," not intended to undermine the vitality of the anti-injunction provision of the Norris-La Guardia Act. 468 F.2d at 1373–4.

Since the factual situations in *Amstar* and *Buffalo Forge* are slightly different from this case in that the collective bargaining agreement in those cases did not contain a "primary picketing clause," this Court must determine whether or not the existence of the "primary picketing clause" in the collective bargaining agreement (Section 41.1) changes the result in the instant case. This Court feels that it does not.

Counsel may argue that the existence of the "primary picketing clause" necessitates a different result in that the "dispute" which triggers the compulsory arbitration machinery may be characterized as either (1) whether or not the picketing by Local 480 is primary or secondary (a factual dispute), or (2) what is the actual meaning of the primary picketing clause (a matter of contract interpretation). But such characterization is to create a smoke screen which conceals the real fire. If the dispute between the parties can be characterized in the above manner, then it is difficult to conceive of any strike or concerted refusal to work which cannot be enjoined. All work stoppages create the possibility of some factual dispute or question of interpreting the collective bargaining agreement. In *Steelworkers v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), the Supreme

Court hypothesized a situation where a particular grievance, for example, contracting-out work was clearly recognized not to be an arbitrable grievance; that is, the union would not be enjoined under *Boys Markets* if it struck over such a dispute. But if the employer could enjoin the strike simply by asserting that a factual dispute (whether or not, for example, the "work" contracted out was actually work) or matter of contract interpretation existed, the employer could, at least initially, enjoin all strikes.

*Boys Markets* was not intended to be such a broad brush which obliterated the prohibition of Norris-La Guardia that federal courts may not enjoin strikes. Moreover, the existence of the "primary picketing clause" would not change the nature of the real underlying dispute to one which is "arbitrable" and thus give this Court jurisdiction to grant an injunction under the principles set forth in *Boys Markets*. Whether or not the dispute is framed in any other manner, the underlying conduct here which the employer seeks to enjoin is the Teamsters' refusal to cross the picket line.

Since this Court has found that this is not an arbitrable dispute within the meaning of *Boys Markets*, the existence of the "primary picketing clause" does not enlarge the Court's jurisdiction, as strictly limited by the Norris-La Guardia Act, to enjoin work stoppages. In other words, if this is a situation in which *Boys Markets*, which creates a narrow exception to the prohibitions of Norris-La Guardia, does not apply, then the Court has no jurisdiction to enjoin the strike. This must be the result, whether or not the existence of the "primary picketing clause" evidences the intent of the Union (and it is certainly not clearly here[2]) to place such dispute within the

2. The "primary picketing clause" may merely have been the means for the Union to articulate a right that it possesses, the right to refuse to cross a lawful picket line, which exists as a matter of law and not because of mutual consent through the collective bargaining agreement. Because of the *Amstar* and *Buffalo Forge* opinions, this would be a more forceful argument for contracts in the Second

and Fifth Circuits which included such a clause.

In this instance, the Court reads the clause as not necessarily intending to include as a "dispute" any refusal by its members to cross the picket line within the meaning of the compulsory arbitration agreement. It may be just as likely that the "primary picketing clause"

quid pro quo of the no-strike pledge and the compulsory arbitration machinery. The Union and the Employer cannot, by private agreement or stipulation, grant the federal courts jurisdiction to issue injunctions where Congress, through the language of the Norris-La Guardia Act, has denied the federal courts such jurisdiction.

For the reasons stated above, this Court reiterates its orders of February 6, 1976 denying the Motion for Injunction Pending Appeal and Motion for Preliminary Injunction.

evidences the intent of the Union to affirm a right it believes it possesses independent of the collective bargaining agreement. This right is the right to refuse to cross a primary picket line. The clause does not necessarily indicate the Union's agreement that any factual dispute as to the secondary or primary nature of the picket lines gives the employer the right to enjoin the refusal to cross prior to completion of arbitration over this factual issue.