**Louis P. DiNICOLA, Plaintiff,**

**v.**

**Dominick DiPAOLO, Donald Gunter, William Vorsheck, Edward Wayne Edwards, the Erie Police Department, and the City of Erie, Defendants.**

**Civil Action No. 94–323 Erie.**

United States District Court,
W.D. Pennsylvania.

Jan. 9, 1996.

As Amended Nov. 6, 1996.

---

852

David L. Hunter, Eckert, Burke, Hunter, Barron & Segel, Erie, PA, Ramsey Clark, Lawrence W. Schilling, New York City, for Louis P. DiNicola.

Gary Eiben, The McDonald Group, Erie, PA, for Dominick DiPaolo, Donald Gunter, Erie Police Department.

James D. McDonald, Brian M. McGowan, The McDonald Group, Erie, PA, for William Vorsheck.

Natalie Dwyer Haller, Quinn, Buseck, Leemhuis, Toohey & Kroto, Inc., Erie, PA, for Edward Wayne Edwards.

Gary Eiben, The McDonald Group, Erie, PA, Gregory A. Karle, Dailey, Restifo & Dailey, Erie, PA, for City of Erie, Pennsylvania.

### MEMORANDUM OPINION

McLAUGHLIN, District Judge.

Plaintiff filed the instant action against Defendants Dominick DiPaolo and Donald Gunter (former police officers with the Erie Police Department), William Vorsheck (a hypnotist formerly residing in Erie County), Edward Wayne Edwards (a former police informant), the Erie Police Department ("EPD"), and the City of Erie (the "City") alleging violations of 42 U.S.C. §§ 1983 and 1988 as well as various state law causes of action. These claims arise out of Plaintiff's arrest and conviction in 1980 on charges of arson and second degree murder for which he was eventually retried and acquitted. This Court has jurisdiction over Plaintiff's claims based on 28 U.S.C. §§ 1331, 1343 and 1367(a).

Presently pending before this Court are motions by all Defendants to dismiss the Plaintiff's First Amended Complaint or, alternatively, for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. For the reasons stated below, these motions will be granted in part and denied in part.

### I. BACKGROUND

On the night of August 30 and early morning of August 31, 1979 a fire ravaged a two-story residence at 622 West 16th Street in

Erie, Pennsylvania. The fire claimed three lives, including two children of Deborah Sweet Adams, the first floor occupant. Plaintiff was suspected by the Erie police of being responsible for the fire. On March 25, 1980 he was arrested and charged with arson and three counts of murder in the second degree. On October 20, 1980 Plaintiff was convicted on all counts. His conviction was subsequently overturned by the Pennsylvania Supreme Court and, following extensive interim proceedings, Plaintiff was retried and acquitted in May of 1994. This suit followed on November 23, 1994.

Plaintiff's First Amended Complaint ("FAC")[1] alleges that the various Defendants acted to deprive Plaintiff of his rights under both federal and state law. Plaintiff states that, following the vacation of his conviction by the Pennsylvania Supreme Court, he discovered: (a) that testimony of the Commonwealth's principal witness was the false product of hypnotic suggestion performed by Vorsheck; (b) that critical exculpatory evidence had been deliberately concealed from him, from the judge who authorized his arrest warrant, and from the original trial court; (c) that Gunter and DiPaolo deliberately failed to record and retain evidence that implicated a different person in the crime; and (d) that certain exculpatory physical evidence was deliberately destroyed. (FAC ¶ 15.)

Plaintiff alleges that a taped statement of Deborah Sweet Adams was taken by Defendant Gunter on September 6, 1979 concerning the night of the fire. Plaintiff claims that both Gunter and DiPaolo knew that Adams's ability to observe and recall events on the night of the fire were severely impaired by her use of marijuana and her participation in sexual intercourse during the time leading up to the fire. (FAC ¶ 18.) Furthermore, nothing in her September 6, 1979 statement directly inculpated Plaintiff. (FAC ¶ 19.)

However, on or about September 17, 1979, Defendants Gunter and DiPaolo caused Adams to be hypnotized by Defendant Vorsheck and allegedly assisted and participated themselves in the hypnosis. (FAC ¶ 20.)

Plaintiff claims that Gunter and DiPaolo informed Vorsheck prior to the session that Plaintiff was the principal suspect and that the purpose of the hypnosis was to develop evidence against him. (FAC ¶ 21.) Vorsheck then allegedly performed hypnotic regression which was highly suggestive and included a series of leading questions. (Id.) Plaintiff avers that, as a result of the hypnosis, Adams adopted a new memory of the events leading up to the fire which caused her to believe that Plaintiff was the perpetrator. Thus, "Adams' [sic] false memory was the product of hypnosis and the plan and agreement among the defendants to bring false criminal charges against the plaintiff." (FAC ¶ 22.) In furtherance of this conspiracy, Plaintiff claims, the Defendants intentionally falsified an affidavit in support of a request for an arrest warrant by stating that Adams's inculpatory statements had been made on September 6, 1979 and concealing the actual September 6, 1979 interview with Adams, which was inconsistent with her subsequent hypnotically induced statements. (Id.)

Plaintiff also avers that DiPaolo and Gunter intentionally executed a false affidavit in support of a criminal complaint against Plaintiff which asserted that Plaintiff caused the August 30, 1979 fire and resulting deaths. (FAC ¶ 23.) The affidavit and complaint are alleged to be false in several respects. For one, Plaintiff claims, the affidavit deliberately concealed the September 6, 1979 statement by Adams and further concealed the fact that Adams's incriminating statements were hypnotically induced under circumstances that would have reasonably led a court to conclude that the statements were false. The affidavit also stated that a second witness, Michael Jefferson, had corroborated Adams's story when, in fact, according to Plaintiff, Jefferson had provided exculpatory information. (FAC ¶ 24.) As a result of this affidavit and complaint, an arrest warrant was issued for Plaintiff's arrest on March 25, 1980. (FAC ¶ 25.) In order to bolster the false charges, DiPaolo and Gunter allegedly then:

---

1. Plaintiff filed his First Amended Complaint on December 15, 1994. The present motions address purported deficiencies in Plaintiff's First Amended Complaint.

caused or permitted the destruction of critical evidence including tape recordings and physical evidence, ignored or suppressed evidence tending to show that other persons, not the plaintiff, had the opportunity and motive to start the fire, ignored or suppressed evidence that another person was responsible for setting the fire, and otherwise failed to conduct a thorough and proper investigation. (FAC ¶ 27.)

In addition to the foregoing, Plaintiff avers that Defendants DiPaolo and Gunter actively solicited and recruited jailhouse informants against Plaintiff with reckless indifference as to the truth or falsity of the information provided. (FAC ¶ 29.) Plaintiff avers that DiPaolo and Gunter recruited Defendant Edwards, a jailhouse informant, and utilized Edwards's statements in Plaintiff's prosecution despite their knowledge that Edwards had a history of dishonesty and despite the fact that at least two other jailhouse informants recruited to testify against Plaintiff had repudiated their statements as being false. (FAC ¶¶ 30–31.) According to Plaintiff, Edwards falsely stated that Plaintiff had confessed to him while the two were inmates at Western Penitentiary; however, Plaintiff had already been released from the penitentiary at the time of this supposed confession. Plaintiff claims that, notwithstanding this inconsistency, Defendants relied on Edwards's testimony in prosecuting Plaintiff. (FAC ¶ 32.)

With respect to his second trial, Plaintiff alleges that Defendant DiPaolo allowed Edwards to falsely attribute new uncharged crimes to Plaintiff and a new motive for allegedly setting the fire. He claims that DiPaolo knew or should have known that Edwards's statements were false inasmuch as certain statements attributed to Plaintiff by Edwards would have occurred at a time when Plaintiff was no longer incarcerated. (FAC ¶ 33.) In order to corroborate Edwards, information was allegedly sought and obtained to show a stab wound to the neck of one of the fire victims, the new theory being that Plaintiff set the fire to conceal the stab wound. Plaintiff avers that the original autopsy revealed no evidence of a neck wound and that any wound received was inflicted post mortem. (FAC ¶ 34.)

The First Amended Complaint asserts that Defendants DiPaolo, Gunter, Vorsheck, and Edwards engaged in an unlawful conspiracy to deprive Plaintiff of his federal constitutional and state rights, including the right to be free from false arrest, false imprisonment, and malicious prosecution. (FAC ¶ 28.) As for the Erie Police Department and the City of Erie, the First Amended Complaint alleges a failure by those Defendants to train, discipline and supervise their agents, servants, and/or employees with respect to the constitutional rights of suspects and criminal defendants. (FAC ¶ 36.) Plaintiff claims that this failure to properly train, supervise and discipline caused the violation of his constitutional rights. (FAC ¶ 37.)

The Amended Complaint sets forth two counts. Count I asserts claims under 42 U.S.C. §§ 1983 and 1988 for alleged violations of Plaintiff's fourth amendment right to be free from unlawful seizure (including freedom from arrests without probable cause, false imprisonment, and malicious prosecution) and his fifth and fourteenth amendment rights to due process of law. (FAC ¶ 40.) Plaintiff's second count asserts state law claims for false arrest and imprisonment, malicious prosecution, spoliation of evidence, intentional infliction of emotional distress, defamation, abuse of process, willful misconduct, prima facie tort, conspiracy tort, negligence and gross negligence. (FAC ¶ 42.)

All Defendants have filed motions to dismiss the Plaintiff's First Amended Complaint or, in the alternative, for a more definite statement under Fed.R.Civ.P. 12(e).

## II. *STANDARD OF REVIEW*

On a Rule 12(b)(6) motion to dismiss, this Court must ordinarily accept the facts presented in the pleadings, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party and may not dismiss the Complaint unless it appears that Plaintiff can prove no set of facts entitling him to relief. *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 71 (3d Cir.1994); *Rocks v. City of Phila-*

*delphia,* 868 F.2d 644, 647 (3d Cir.1989); *Angelastro v. Prudential–Bache Securities, Inc.,* 764 F.2d 939, 944 (3d Cir.1985), *cert. denied,* 474 U.S. 935, 106 S.Ct. 267, 88 L.Ed.2d 274 (1985); *Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980).[2]

## III. DISCUSSION

### A. "Under Color of Law" Issue

Pursuant to 42 U.S.C. § 1983, a cause of action exists against:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws ...

In determining whether a defendant acted under "color of state law" for purposes of § 1983, courts employ the same analysis used in determining whether an individual is a "state actor" within the meaning of the Fourteenth Amendment. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982); *Krynicky v. University of Pittsburgh,* 742 F.2d 94, 97 (3d Cir.1984), *cert. denied,* 471 U.S. 1015, 105 S.Ct. 2018, 85 L.Ed.2d 300 (1985). Vorsheck and Edwards contend that they cannot be liable under § 1983 because they did not act under color of state law.

"The Supreme Court in varying circumstances appears to utilize three discrete tests to determine whether there has been state action." *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1142 (3d Cir.), *cert. denied,* ——— U.S. ———, 116 S.Ct. 165, 133 L.Ed.2d 107 (1995). The first test inquires whether "the private entity has exercised powers that are traditionally the exclusive prerogative of the state." *Id.* (quoting *Blum v. Yaretsky,* 457 U.S. 991, 1004–05, 102 S.Ct. 2777, 2785–86, 73 L.Ed.2d 534 (1982)). *See also Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966) (private trustees who operated public park in racially discriminatory manner were state actors); *Terry v. Adams,* 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (private organization conducting pre-primary elections for the purpose of sending candidates to primary election was state actor). *Cf. Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974) (private utility company did not act under color of state law despite the fact that it was heavily regulated by the state and held at least a partial monopoly); *Rendell–Baker v. Kohn, supra* (private school engaged in the education of maladjusted high school students did not perform an exclusively public function because state's policy of funding the school in no way made school's services the exclusive province of the state).

The second test considers whether "the private party has acted with the help of or in concert with state officials." *Mark,* 51 F.3d at 1142 (quoting *McKeesport Hospital v. Accreditation Council for Graduate Medical Ed.,* 24 F.3d 519 (3d Cir.1994)). *See also Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982) (private party who, pursuant to state statute, conducted prejudgment attachment of another person's property was state actor under § 1983); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (conspiracy between a private party and a state official to engage in unlawful discrimination constituted action "under color of state law" for purposes of § 1983 liability).

---

2. We note that certain Defendants have provided various materials outside of the pleadings in support of their motions, including records from Plaintiff's criminal proceedings in state court. Although the Court relies to some extent on these state court records in resolving issues concerning the applicable statutes of limitations and collateral estoppel, such reliance does not require the Court to convert Defendants' motions into motions for summary judgment under Fed.R.Civ.P. 56. District courts are entitled to take judicial notice of public records in considering a motion for dismissal or motion for judgment on the pleadings. *Pache v. Wallace,* Civ. No. 93–5164, 1995 WL 118457, at *2 (E.D.Pa. March 20, 1995), *aff'd,* 72 F.3d 123 (3d Cir.1995) (Table No. 95–1307); *Taha v. I.N.S.,* 828 F.Supp. 362, 364 n. 6 (E.D.Pa.1993); *Piazza v. Major League Baseball,* 831 F.Supp. 420, 427 n. 8 (E.D.Pa.1993). Because Defendants' other materials relate to the issue of state action which we view as premature for summary judgment disposition, we will not convert Defendants' motions into motions for summary judgment but will instead permit further development of the record on that issue.

The third test, or "symbiotic relationship" test, inquires whether "[t]he State has so far insinuated itself into a position of interdependence with ... [the acting party] that it must be recognized as a joint participant in the challenged activity." *Mark, supra,* at 1142 (quoting *Krynicky,* 742 F.2d at 98 and *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) (private restaurant was state actor where restaurant was located in building owned by defendant, an agency of the state, and state benefitted financially from restaurant's business)).

■ Plaintiff contends that Vorsheck was a state actor under either the "public function" or the "joint participation/conspiracy" theories. His "public function" theory is that Vorsheck was hired and paid by the state's officers to directly participate in the criminal investigation. Specifically, Vorsheck is alleged to have hypnotized and questioned the key prosecution witness and interrogated Plaintiff, the key suspect. In this respect, Plaintiff argues, Vorsheck "was acting as a police investigator, a function that is singularly one of the state and which the state retains as its special and unique function." (Pl.'s Br. in Opp. to Def. Vorsheck's Mot. to Dismiss, at p. 9.)

In determining what constitutes an exclusive government function, the Third Circuit has followed Supreme Court cases in holding that receipt of public funds and the performance of a public service are not enough alone to make a private entity a state actor. *Groman v. Township of Manalapan,* 47 F.3d 628, 640 (3d Cir.1995). In *Groman,* the court held that a first aid squad was not a state actor under the exclusive government function test where the only evidence proffered by the plaintiff was the squad's public funding and service to the public. *See also Black by Black v. Indiana Area School Dist.,* 985 F.2d 707, 710–11 (3d Cir.1993) (school bus driver and officer of bus company did not perform exclusive government function even

though paid by the state and performing a service for the public).

This Court therefore has some doubts as to whether a private hypnotist hired by the police on an ad-hoc basis can properly be characterized as performing any exclusive public function. We recognize, however, that Plaintiff has asserted an additional factor— an alleged conspiracy among Vorsheck and the other Defendants to violate Plaintiff's rights by, among other things, bringing false criminal charges based on Adams's false recollection of the fatal house fire. Plaintiff alleges that Vorsheck acted at the direction and with the assistance of the detectives, who were unquestionably themselves state actors. Assuming the truth of these allegations, a logical inference would be that Vorsheck did not exercise independent professional judgment in hypnotizing Adams but, rather, tainted the hypnotic process and Adams's recollection pursuant to the officers' direction.

Whether such facts, if proved, would sufficiently convert Vorsheck into an agent of the police need not be decided now because, in any event, these allegations are sufficient to state a claim of state action under the joint participation/conspiracy theory. Under this scenario, "[s]tate action may be found if the private party has acted with the help of or in concert with state officials." *McKeesport Hospital,* 24 F.3d at 524.

■ Vorsheck cites *Ersek v. Township of Springfield, Delaware County,* 822 F.Supp. 218, 223 (E.D.Pa.1993), and *Safeguard Mut. Ins. Co. v. Miller,* 477 F.Supp. 299, 304 (E.D.Pa.1979), for the proposition that, in order to plead conspiracy under § 1983, a plaintiff must allege specific facts suggesting that there was a mutual understanding among the conspirators to take actions directed toward an unconstitutional end. Assuming that this is a correct statement of the law,[3] we believe that Plaintiff has alleged sufficiently specific facts to withstand dis-

---

**3.** We note that in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court held that there is no heightened pleading requirement in § 1983 suits against municipalities. The Court reasoned that

a heightened pleading standard would be impossible to square with the liberal notice pleading established by Fed.R.Civ.P. 8(a)(2), which requires only that the complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."

missal. Paragraphs 20 through 22 of the Amended Complaint allege as follows:

20. On or about September 17, 1979, defendants DiPaolo and Gunter caused Adams to be hypnotized by defendant Vorsheck ... DiPaolo and Gunter gave information and instructions to Vorsheck prior to Adam's [sic] hypnosis and otherwise participated and assisted Vorsheck in conducting the hypnosis ...

21. The hypnosis session conducted by defendant Vorsheck with the assistance and participation of defendant's [sic] DiPaolo and Gunter was highly suggestive and otherwise done in violation of generally accepted standards of hypnosis of witnesses for forensic purposes. DiPaolo and Gunter informed Vorsheck that plaintiff was the principle suspect in an arson case and the purpose of the hypnosis was to develop evidence against him. As a result, the hypnotist performed hypnotic regression on the witness, asked her a series of leading questions under the direction of the police officers, with animus toward the plaintiff Louis DiNicola.

22. As a result of this hypnosis, Adams adopted a new memory of the events leading up to the fire which caused her to believe that plaintiff set the fire. Adams' [sic] false memory was the product of hypnosis and the plan and agreement among the defendants to bring false criminal charges against the plaintiff. To further this conspiracy, these defendants deliberately concealed the September 6, 1979 interview with Adams, which was inconsistent with the hypnotically induced statement, and deliberately falsified the affidavit in support of the request for an arrest warrant, by stating that the inculpatory statement had been given on September 6, 1979.

These allegations are sufficiently detailed to put Defendants on fair notice of the claims against them and to permit Defendants to frame an adequate responsive pleading.

■ Vorsheck argues that Plaintiff cannot overcome a motion for summary judgment with mere bare assertions, conclusory allega-

tions or suspicions regarding a conspiracy. While that may be true, the Court views this case as being premature for summary disposition. Vorsheck has appended his testimony from a 1984 suppression hearing concerning the hypnosis of Ms. Adams and argues that no further discovery is warranted. We note, however, that Vorsheck has also supplied a recent affidavit in support of his motion to dismiss which, Plaintiff states, has yet to be tested on deposition. We also discern possible factual disputes in the record concerning whether DiPaolo and/or Gunter were present with Vorsheck during Adams's hypnosis, whether Vorsheck's questions to Adams were deliberately designed to incriminate Plaintiff, the extent to which Vorsheck was informed of the investigation by DiPaolo and Gunter prior to Adams's hypnosis, and whether Vorsheck attempted to conceal any untruths in the arrest warrant affidavit when he testified in 1984 that he had not seen DiPaolo and Gunter since DiNicola's 1979 attempted hypnosis.[4] In light of these considerations and the relatively early stage of this case, the Court cannot say that further development of the record would not be beneficial.

■ We next consider the "state actor" status of Defendant Edwards, whom Plaintiff avers was recruited by DiPaolo and Gunter to provide false statements in connection with Plaintiff's prosecution. Upon review of the complaint, we find the allegations as to Edwards sufficient to establish state action under either the "public function" analysis or the "conspiracy" analysis.

Several federal courts have recognized that a police informant may be considered a "state actor" for purposes of § 1983 liability if the informant acts in an investigatory capacity at the direction of or under the supervision of governmental authorities and if there is a nexus between the informant's activities and the activities of the authorities themselves. *See Bartels v. Mueller*, Civ.A. No. 88–4621, 1989 WL 151196, at *5 (E.D.Pa. Dec. 12, 1989). *See also Ghandi v. Police Dep't of City of Detroit*, 823 F.2d 959, 964 (6th Cir.1987) ("courts must look to all the

---

**4.** We do not now pass on whether these issues will ultimately be sufficiently supported by the

record or whether, if proved, they will create a genuine issue as to the existence of a conspiracy.

facts to determine whether a paid government informant 'may fairly be said to be a [government] actor ... because he has acted together with or has obtained significant aid from [government] officials, or because his conduct is otherwise chargeable to the State.' ") (quoting *Lugar v. Edmondson Oil Co., supra* ), *cert. denied sub nom. Ghandhi v. Fayed,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988); *Matje v. Leis,* 571 F.Supp. 918, 926–27 (S.D.Ohio 1983) (issue of fact existed as to whether informant was state actor where plaintiffs demonstrated nexus between informant's actions and the tacit acquiescence or sanctioning of those actions by police defendants). *Cf. Lomax v. Davis,* 571 F.Supp. 805, 807 (N.D.Miss.1983) (allegations that private defendant planted illegal drugs in plaintiff's apartment and subsequently revealed location of drugs to sheriff was not sufficient to show state action where there was no allegation that sheriff knowingly participated in abuse of process or that the arrest and investigation procedures were themselves unconstitutional and where government officials themselves were in no way involved in defendants' scheme to deprive plaintiff of her civil rights).

◾ Here, Plaintiff claims that Edwards provided false information inculpating Plaintiff in the 1979 fire at the direction of DiPaolo and Gunter and that DiPaolo and Gunter utilized these statements in their prosecution notwithstanding their awareness of Edwards's "notorious reputation for fraud in judicial and extra-judicial contexts." (FAC ¶ 30.) The Complaint further alleges that, at the time of Plaintiff's second trial, DiPaolo created a new theory of Plaintiff's guilt and recruited Edwards to falsely attribute new uncharged crimes to Plaintiff, thereby creating a new motive for the fire. (*Id.* ¶ 33.) There is no suggestion that Edwards in any

way acted outside the scope of his duties as a police informant. *Cf. Hiser v. City of Bowling Green,* 42 F.3d 382, 384 (6th Cir.1994) (informant was not acting under color of state law in stealing check from decedent and then killing her; such acts were outside the scope of informant duties, which were limited to obtaining evidence against drug dealers), *cert. denied,* —— U.S. ——, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995). Although Edwards places much significance on the fact that he was not paid by the police, the cases cited above generally do not turn on that particular factor. In sum, we find Plaintiff's allegations sufficient to bring Edwards within the parameters of state action for present purposes.[5]

### B. *Statute of Limitations Issues*

◾ We next consider whether any of Plaintiff's claims are barred by the applicable statutes of limitations. Because Congress did not provide a specific federal statute of limitations in the Civil Rights Act, federal courts adjudicating § 1983 claims must apply the statute of limitations for the most analogous state cause of action. *Bougher v. University of Pittsburgh,* 882 F.2d 74, 78 (3d Cir.1989); *Drum v. Nasuti,* 648 F.Supp. 888, 902 (E.D.Pa.1986) (*Bivens* action), *aff'd,* 831 F.2d 286 (3d Cir.1987). The most analogous state statute of limitations is the two-year period applicable to actions for personal injury set forth in 42 Pa.Cons.Stat.Ann. § 5524 (Purdons Supp.1995). *Bougher,* 882 F.2d at 78; *Drum,* 648 F.Supp. at 902–03. *See also Rose v. Bartle,* 871 F.2d 331, 347 n. 13 (3d Cir.1989); *Faison v. Sex Crimes Unit of Philadelphia,* 845 F.Supp. 1079, 1084 (E.D.Pa.1994). Federal law nevertheless controls the date of accrual of a § 1983 action, which is generally when the plaintiff first knows or has reason to know of the

---

5. Edwards argues that, in any event, he is immune for any liability under on the doctrine of witness immunity set forth in *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983). In *Briscoe,* the Supreme Court held that witnesses are absolutely immune from damages liability based on their in-court testimony and, thus, a police officer who allegedly gave perjurious testimony at Briscoe's former criminal trial could not be liable for money · damages under § 1983. While it is true that the doctrine of witness immunity protects Edwards from any testimony provided in court or during court-related proceedings, such immunity would not necessarily extend to actions taken outside of the judicial context. We read Plaintiff's First Amended Complaint as asserting liability based on out of court statements made by Edwards to the police and Plaintiff has so argued. Thus, we reject Edward's claim that he is entitled to immunity from this suit.

underlying injury giving rise to his cause of action. *Deary v. Three Un–Named Police Officers,* 746 F.2d 185, 197 n. 16 (3d Cir. 1984); *Sandutch v. Muroski,* 684 F.2d 252, 254 (3d Cir.1982).

Defendants argue that all of Plaintiff's federal civil rights claims are time-barred with the exception of Plaintiff's claims for malicious prosecution and conspiracy to commit malicious prosecution. Defendants concede that these claims are timely inasmuch as they could not have accrued until May of 1994 when the criminal proceedings terminated in Plaintiff's favor. *See Rose v. Bartle,* 871 F.2d at 349 (Section 1983 claim based on malicious prosecution does not accrue until the underlying proceedings terminate in favor of the accused); *Deary,* 746 F.2d at 197 n. 16 (same). *See also Rose,* 871 F.2d at 352 (claim for conspiracy to maliciously prosecute under § 1983 cannot accrue until termination of the proceedings in the plaintiff's favor).

■ With respect to all other alleged constitutional violations, however, Defendants maintain that Plaintiff was aware of the operative facts giving rise to those claims no later than 1984. In support of this argument, Defendants have supplied relevant records from Plaintiff's prior state criminal proceedings. These records include several motions filed by Plaintiff in 1984 which demonstrate his awareness of the very conduct that forms the gravamen of his present complaint. For example, in March of 1984 Plaintiff filed various motions to exclude evidence and/or dismiss the criminal charges against him outlining both Vorsheck's involvement in hypnotizing Deborah Sweet and DiPaolo's and Gunter's alleged actions in covering up the hypnosis. (*See* appendix of evidentiary materials submitted by Defendants DiPaolo, Gunter, the Erie Police Dept. and the City of Erie, at Doc. Nos. 1–4, 6, 10 and 30, pp. 259, 384, 410, 492–502, 707.) Plaintiff's brief in support of his motion to dismiss the criminal information specifically avers that he first became aware of the hypnosis on February 2, 1984. (Doc. No. 6, p. 410.) The transcript of the hypnosis was within Plaintiff's possession at that time, and citations to the transcript are incorporated into the brief. (*Id.* at p. 412.)

Similarly, Plaintiff was apparently aware of Defendant Edwards's statements against him in August of 1984 as reflected in a memorandum opinion by Judge Fred Anthony of the Erie County Court of Common Pleas which notes that a written statement by Edwards had been provided to DiNicola. (Doc. No. 21, p. 591.) In September, 1984, Judge Anthony denied Plaintiff's motion to suppress from his second criminal trial all statements allegedly made by himself to Edwards. (Doc. No. 23.) Plaintiff filed a motion to compel discovery of prison transfer records in order to prove his theory that Edwards lied about having received an inculpatory statement from Plaintiff at a time when the latter was no longer incarcerated with Edwards. An October, 1984 opinion by Judge Anthony notes that the "move records" were turned over to DiNicola on October 17, 1984. (Doc. No. 26.) Plaintiff also filed a motion in July of 1984 seeking dismissal of the charges against him based on the same type of misconduct by DiPaolo and Gunter as is alleged here. (Doc. 5.) The motion was briefed in August of 1984 and an evidentiary hearing was held in July, 1984. (Doc. 6 and Doc. 9, p. 483.)

■ Plaintiff does not dispute his awareness in 1984 of the Defendants' alleged misconduct but contends that his § 1983 claims for false arrest, false imprisonment, and denial of a fair trial are timely in light of *Heck v. Humphrey,* 512 U.S. 477, ——, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994). The Court is inclined to agree. In *Heck,* the Supreme Court held that a plaintiff could not assert a § 1983 claim to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, unless he could demonstrate that the conviction or sentence had already been reversed, expunged, declared invalid or called into question by issuance of a writ of habeas corpus. 512 U.S. at ——, 114 S.Ct. at 2372. Following *Heck,* district courts are charged with the duty of considering:

> whether a judgment in favor of the plaintiff [on the § 1983 claim] would necessarily imply the invalidity of his conviction or

sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.*

Here, Plaintiff essentially alleges that he was arrested, charged and prosecuted for arson and second degree murder based on evidence which the Defendants knew to be tainted, falsified or otherwise unreliable. Additionally, it is alleged that Defendants DiPaolo and Gunter concealed and/or destroyed exculpatory evidence. These allegations form the bases not only of Plaintiff's malicious prosecution claim, but also his claims that he was denied a fair trial and that his arrest and detention were unsupported by probable cause. We believe that, had Plaintiff filed the present § 1983 action prior to his acquittal, his success on these claims would necessarily have undermined the validity of the charges then still pending against him. It would also have cast doubt on the validity of his prior conviction which, although vacated by the Pennsylvania Supreme Court in 1983 based on trial error, was specifically found to have been supported by sufficient evidence. *See Commonwealth v. DiNicola,* 503 Pa. 90, 468 A.2d 1078 (1983). Under *Heck,* Plaintiff's § 1983 claims would have been premature prior to Plaintiff's acquittal in 1994. *See Heck,* 512 U.S. at —— n. 8, 114 S.Ct. at 2373 n. 8 (suggesting that, if state criminal defendant brings § 1983 suit while criminal proceedings are pending, abstention by federal court would be proper).

In arriving at this conclusion, the Court is persuaded by the reasoning set forth in *Smith v. Holtz,* 879 F.Supp. 435 (M.D.Pa. 1995) (McClure, J.). That case involved a § 1983 claim filed by Jay Smith against various state investigators for denial of a fair criminal trial premised on the investigators' alleged concealment of exculpatory evidence which was critical to Smith's defense. Smith's 1986 conviction had been reversed on direct appeal in 1987 on unrelated evidentiary grounds and remanded for a new trial. The criminal charges were subsequently dismissed and Smith was discharged from state custody in 1992 by the Pennsylvania Supreme Court based on its finding that the Commonwealth had deliberately suppressed exculpatory evidence. Smith filed his § 1983 action in 1993. The district court initially ruled that the § 1983 claim was time-barred because it had been filed more than two years after Smith's learning of the concealment of evidence. Upon reconsideration, however, the court ruled that, under *Heck v. Humphrey,* the § 1983 claim did not accrue until Smith's conviction was invalidated. It reasoned that:

> [r]equiring a section 1983 plaintiff to commence a federal action seeking damages for denial of his federal constitutional right to a fair trial prior to the final resolution of all state criminal charges against him would run contrary to well established principles of comity and federalism. If such an action were commenced, the federal district court would, in most cases, be compelled to abstain from ruling and stay the action pending final disposition in state court. Any other result would create the possibility of a ruling in conflict with the outcome in state court.

879 F.Supp. at 441.

Although Smith had obtained a reversal of his conviction in 1989, the court held that the operative event for purposes of accrual of the § 1983 claim, consistent with *Heck,* was the Pennsylvania Supreme Court's order discharging Smith from custody and barring any further prosecution against him on the underlying criminal charges. The *Smith* court explained:

> In *Heck,* the [United States Supreme C]ourt deemed the invalidation of a conviction or sentence to be the operative equivalent of a termination in the plaintiff's favor. However, the invalidation of a conviction does not always equate to a termination of the criminal proceedings in favor of an accused—it often results only in a remand for a new trial, as in the instant case. If the accused were then retried and convicted, there would, presumably, be no viable § 1983 cause of action, just as there would be no state malicious prosecution cause of action. So as not to interfere with the state process, consistent with habeas exhaustion principles as elaborated upon in

*Heck,* there must be finality—a termination of the criminal proceedings. Furthermore, the termination must be in "in favor of" the accused, at least in the sense that the charges have been dismissed and the defendant discharged. We therefore hold that there can be no civil action under § 1983 for denial of due process during trial for withholding exculpatory evidence unless and until the charges have been dismissed and the defendant discharged.

879 F.Supp. at 443.

This Court finds the foregoing reasoning persuasive in the present case. Accordingly, we conclude that Plaintiff's § 1983 claims are not barred on statute of limitations grounds.[6]

▆▆▆ Defendants also move for dismissal of most of Plaintiff's state law claims based on statute of limitations although, here again, they concede that the common law malicious prosecution claim is timely.[7] Except for Plaintiff's defamation claim, which carries a one-year statute of limitations, 42 Pa.Cons.Stat. § 5523, all of the other state law claims would appear to be subject to a two-year statute of limitations. *See* 42 Pa. Cons.Stat. §§ 5524 (applicable to actions for false imprisonment, false arrest, malicious abuse of process, actions to recover damages for personal injuries caused by the wrongful act or negligence of another, and any other action to recover damages for personal injury founded on negligent, intentional or otherwise tortious conduct). Under Pennsylvania's "discovery rule," the statute of limitations does not begin to run until the plaintiff

has discovered his injury or, in the exercise of reasonable diligence, should have discovered his injury. *Doe v. Kohn, Nast & Graf, P.C.,* 866 F.Supp. 190 (E.D.Pa.1994).

As observed above, the alleged unlawful acts giving rise to all of the foregoing causes of action were known to Plaintiff at least by 1984. Accordingly, those claims, aside from the common law malicious prosecution claim, are now time-barred.

▆▆▆ Plaintiff argues that the statute of limitations period for these claims was tolled by virtue of having filed a previous action against Defendants Gunter, DiPaolo, the EPD and the City in 1982. That action, filed in the Erie County Court of Common Pleas, alleged a claim for false arrest under Pennsylvania law and an action under § 1983 for civil rights violations. It was dismissed on demurrer partly on the grounds that Plaintiff could not establish the essential element of lack of probable cause for his arrest. Plaintiff cites no law in support of his argument that this filing tolled the statute of limitations. Rather, he claims that the state court's opinion and order precluded the filing of his present claims prior to acquittal on the underlying charges. We find this argument to be without merit.

Our review of the state court's opinion reveals that the dismissal was premised upon a line of cases holding that a conviction presumptively establishes the existence of probable cause with respect to the subject charges, absent a showing that the conviction

---

6. We recognize that the *Heck* Court perceived a conceptual distinction between causes of action for false arrest and imprisonment on one hand—which do not compensate for confinement imposed pursuant to legal process and which permit damages only from the time of detention up until issuance of process or arraignment—and the tort of malicious prosecution on the other hand, which is designed to compensate for confinement imposed pursuant to legal process and which permits damages covering post-arraignment arrest or imprisonment. 512 U.S. at ——, 114 S.Ct. at 2371 (quoting W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on Law of Torts 888 (5th ed. 1984)). However, this distinction is somewhat blurred in the present case because one common set of alleged facts gives rise to both Plaintiff's malicious prosecution claim and his claim for arrest without probable cause. Thus, under the facts alleged, we

believe that Plaintiff's § 1983 false arrest and false imprisonment claims are controlled by *Heck* notwithstanding the Third Circuit's pre-*Heck* ruling that acquittal is not necessary for the accrual of a § 1983 false arrest claim. *See Rose v. Bartle,* 871 F.2d 331, 351 (3d Cir.1989). We leave open the question whether Plaintiff's false arrest/imprisonment claims are appropriate in light of the fact that he was arrested pursuant to legal process.

7. Under Pennsylvania law, one element of a malicious prosecution claim is that the criminal proceedings have terminated in favor of the plaintiff. Thus, the cause of action does not accrue until acquittal or other favorable disposition. *Cap v. K–Mart Discount Stores, Inc.,* 357 Pa.Super. 9, 515 A.2d 52 (1986).

was achieved through perjury, fraud, or corruption. *See, e.g., Howell v. Tanner,* 650 F.2d 610, 615 n. 6 (5th Cir.1981), *cert. denied,* 456 U.S. 918, 102 S.Ct. 1775, 72 L.Ed.2d 178 (1982) and *cert. denied sub nom. Raulerson v. Howell,* 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 180 (1982); *Bergstralh v. Lowe,* 504 F.2d 1276, 1278–79 (9th Cir.1974), *cert. denied,* 420 U.S. 930, 95 S.Ct. 1131, 43 L.Ed.2d 402 (1975). *See also Heck v. Humphrey,* 512 U.S. at —— n. 4, 114 S.Ct. at 2372 n. 4 (observing that, early on, an exception to the general rule that a conviction defeated an allegation of lack of probable cause was recognized for cases involving fraud, perjury or mistake of law). Because in 1982 Plaintiff's conviction was still undisturbed, the Court of Common Pleas ruled that the presumption of probable cause applied. Following that line of reasoning, Plaintiff had grounds in 1984 to assert that his conviction was procured through corrupt or false means and, thus, there were grounds upon which to assert a cause of action which would have fallen within a recognized exception to the state court's ruling. The 1982 action therefore did not toll the applicable statute of limitations on the state law claims.[8]

### C. *Res Judicata/Collateral Estoppel Issues*

 Defendants also argue that Plaintiff's claims are barred by virtue of the doctrines of res judicata and/or collateral estoppel. The res judicata effect of state court decisions in § 1983 claims is a matter of state law. *Heck v. Humphrey,* 512 U.S. at —— n. 2, 114 S.Ct. at 2368 n. 2 (citing *Migra v. Warren City School Dist. Bd. of Ed.,* 465

U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). Thus, a federal court must give the prior determination the same preclusive effect that would be accorded by state courts applying state rules of preclusion. *Wade v. City of Pittsburgh,* 765 F.2d 405 (3d Cir.1985). Under Pennsylvania law, res judicata precludes relitigation of claims which were actually litigated or which could have been litigated in a prior proceeding if, as between the two proceedings, there is identity of the thing sued upon, the cause of action, the parties, and the quality or capacity of the party suing or being sued. *City of Pittsburgh v. Zoning Bd. of Adjustment of City of Pittsburgh,* 522 Pa. 44, 54, 559 A.2d 896, 901 (1989).

 Defendants argue that, under the doctrine of collateral estoppel, Plaintiff is precluded from relitigating the issue of probable cause. As noted above, the 1982 action was dismissed on demurrer partly based on Plaintiff's failure to establish lack of probable cause for his arrest. Defendants argue that this finding precludes Plaintiff from relitigating the issue of probable cause with regard to his present claims. Under Pennsylvania law, a party is precluded from relitigating an issue decided adversely to him in a prior proceeding if: (1) he was a party to the prior litigation; (2) he had a full and fair opportunity to litigate the issue in question in the prior proceeding; (3) the issue determined in the prior proceeding was the same as that raised in the subsequent action; (4) the decision in the prior proceeding was essential to the judgment rendered; and (5) a final judgment was entered on the merits. *Shelton v. Macey,* 883 F.Supp. 1047, 1049 (E.D.Pa. 1995); *Ashford v. Skiles,* 837 F.Supp. 108,

---

8. Plaintiff also contends that, under the state court's ruling, his claims for false arrest could not accrue absent termination of the underlying criminal proceedings in Plaintiff's favor. To the extent that the opinion can be read to state this proposition, we note that such a proposition seems to be in conflict with case law suggesting that favorable termination of the criminal proceedings is not an element of a false arrest claim. *See, e.g., Valenti v. Sheeler,* 765 F.Supp. 227, 231 (E.D.Pa.1991) (two elements of false arrest/false imprisonment are (1) the detention of the person and (2) the unlawfulness of that detention); *Renk v. City of Pittsburgh,* 537 Pa. 68, 641 A.2d 289, 293 (1994) (same) (citing *Fagan v. Pittsburgh Terminal Coal Corp.,* 299 Pa. 109, 149 A. 159

(1930)); *Lokey v. Kinney,* 57 Lanc.Rev. 491 (Pa. Comm.Pl.1961) (same). Moreover, the cases cited in the state court decision primarily involved malicious prosecution claims. *See Woodyatt v. Bank of Old York Road,* 408 Pa. 257, 182 A.2d 500 (1962) (action for malicious prosecution); *Sicola v. First Nat'l Bank of Altoona,* 404 Pa. 18, 170 A.2d 584 (1961) (same). *See also Smoker v. Ohl,* 335 Pa. 270, 6 A.2d 810 (1939) (holding that unappealed conviction gives rise to presumption of probable cause sufficient to defeat false arrest/imprisonment claim and also noting that, for malicious prosecution claims, favorable termination of criminal proceedings is prerequisite to suit).

112 (E.D.Pa.1993) (citing *Pittsburgh v. Zoning Bd. of Adjustment, supra* ).

██ As previously discussed, the 1982 state court ruling was premised upon a line of cases holding that a valid conviction untainted by fraud or corruption establishes a presumption of probable cause. Because in 1982 Plaintiff's conviction had not yet been disturbed on appeal, the court found that the presumption of probable cause still applied. However, there is a recognized exception to res judicata and collateral estoppel where there are materially changed circumstances that implicate controlling facts which could not have been discovered through the exercise of due diligence. *Karibjanian v. Chromalloy Pharmaceutical, Inc.*, No. 90–4641, 1991 WL 34715, at *3 (E.D.Pa. March 13, 1991) (citing *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 846 (3d Cir.1974) and (*Klein v. Comm. of Internal Revenue*, 880 F.2d 260, 263 (10th Cir.1989)). We believe the facts as alleged by Plaintiff bring this case within that exception. Plaintiff did not know in 1982, and apparently could not have known, of the Defendants' alleged involvement in his prosecution. Assuming the truth of Plaintiff's allegations, Defendants' acts might well establish a conviction obtained by fraud or corruption such that the presumption of probable cause would not apply. Thus, the subsequent discovery of Defendants' alleged unlawful acts, as pled, constitutes materially changed circumstances which implicate the controlling assumption underlying the state court's decision—i.e. the assumption that Plaintiff had received a legally supported and constitutionally valid conviction untainted by fraud or corruption. Plaintiff's allegations would therefore establish an exception to res judicata and collateral estoppel. ·

██ Defendants Gunter and DiPaolo argue that Plaintiff was required to plead this newly discovered evidence earlier. They cite *Carringer v. Taylor*, 402 Pa.Super. 197, 586 A.2d 928 (1990), *alloc. denied*, 533 Pa. 629, 621 A.2d 576 (1992), for the proposition that, under Pennsylvania law, Plaintiff could have amended his Complaint to allege this after-discovered evidence even subsequent to the state common pleas court's decision and

while that decision was still pending on appeal. Even had Plaintiff attempted to do so, it is far from clear that Plaintiff would have had the same full and fair opportunity to litigate these issues as if alleging the newly discovered evidence in the first instance. As *Carringer* recognizes, an amendment under Pa.R.C.P. 1033 is discretionary with the trial court and will not be disturbed upon appeal absent abuse of discretion. Nor is it clear on this record that Plaintiff had a full and fair opportunity to litigate the issue of probable cause before Judge Anthony in August of 1984 when DiNicola's motion to dismiss the criminal charges against him was decided. Although the motion was based partly on DiNicola's allegation of illegal arrest, it is not presently clear whether all of the operative facts now alleged in this action (for example, the fact that statements attributed to DiNicola by Edwards were reportedly made at a time when DiNicola was no longer incarcerated) were known to DiNicola in August of 1984.

In any event, Defendants are no more prejudiced than they would be if Plaintiff had never brought suit in 1982 for, even had that suit not been filed, Defendants would still be required to defend the allegations now charged insofar as they relate to Plaintiff's malicious prosecutions claims which, it is conceded, were inchoate prior to 1994. Under the circumstances, Plaintiff will not be barred from litigating the issue of probable cause on his federal and state law malicious prosecution claims.

D. *Plaintiff's Claims for Malicious Prosecution and Conspiracy to Maliciously Prosecute*

██ Defendant Vorsheck argues that Plaintiff is unable to maintain a cause of action for malicious prosecution under § 1983 to the extent that it is premised on the Fourteenth Amendment Due Process Clause. While that may be true under the Supreme Court's ruling in *Albright v. Oliver*, 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), we note that Plaintiff has specifically pled his malicious prosecution claim as a violation of the fourth amendment (as applied to the states through the fourteenth amendment).

The Supreme Court has not otherwise foreclosed § 1983 malicious prosecution claims and we decline to do so now.[9]

 Vorsheck also argues, however, that Plaintiff cannot establish a valid § 1983 claim for malicious prosecution because he cannot establish the substantive element of actual malice.[10] Actual malice in the context of malicious prosecution claims is defined as "either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Lee,* 847 F.2d at 70. Defendants claim that Plaintiff's allegations with regard to malice are only conclusory and lack corroborating factual specificity. We disagree and view Plaintiff's allegations as sufficiently clear such that, if taken as true, they could demonstrate Vorsheck's lack of belief in the propriety of the prosecution. While Defendants cite cases for the proposition that unsupported, bald assertions of malice cannot survive a motion for summary judgment, we view the present record as insufficiently developed to determine this issue on a summary judgment basis. In short, the presence or absence of malice is a matter that may be better determined after all parties have had an opportunity for adequate discovery.

 Finally, Vorsheck contends that he cannot be liable for malicious prosecution because he was not responsible for instituting the criminal proceedings against Plaintiff. However, Plaintiff has alleged that Vorsheck acted in conspiracy with the other Defendants for the purpose of, among other things, committing malicious prosecution. We need not consider now whether Plaintiff will ultimately be able to prove a conspiracy. For present purposes this allegation is sufficient to implicate Vorsheck in the filing of the criminal charges, since the acts of one conspirator are generally attributable to other co-conspirators.

### E. Plaintiff's Claims against the Erie Police Department

Plaintiff has named as a Defendant the Erie Police Department. It is argued by Defendants that the Erie Police Department is not a "person" capable of being sued under § 1983 inasmuch as it is a mere sub-unit of the City of Erie. *See Johnson v. City of Erie,* 834 F.Supp. 873, 878–79 (W.D.Pa.1993) (dismissing § 1983 claim against EPD on the grounds that it is not a proper defendant). Plaintiff concedes the EPD is a sub-unit of the City and moves to dismiss it from this action. Plaintiff's motion will be granted.

### F. Defendants' Motions for a More Definite Statement

Finally, Defendants claim that Plaintiff's conspiracy claim is too vague to permit the framing of a proper response. We have previously considered this argument and found that the allegations are sufficient to put Defendants on notice of the claims against them and to permit an adequate response thereto. Accordingly, Defendants' motions for a more definite statement will be denied.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's § 1983 claims under Count I will be dismissed only to the extent they are premised upon alleged violations of the Fifth Amendment to the United States Constitution. As to Count II, the Court will deny the Defendants' motions to dismiss only with respect to Plaintiff's state law claim for malicious prosecution. In all other respects, Plaintiff's claims under Count II will be dismissed as time-barred. Finally, we will deny the De-

9. However, Plaintiff's § 1983 claims will be dismissed to the extent they are premised upon alleged violation of his fifth amendment due process rights, as the due process clause of the fifth amendment does not apply to the actions of state officials. *Heinly v. Queen,* 146 F.R.D. 102, 109 (E.D.Pa.1993); *Huffaker v. Bucks County Dist. Attorney's Office,* 758 F.Supp. 287, 290 (E.D.Pa. 1991).

10. The Third Circuit has held that § 1983 claims for malicious prosecution must include the elements of the common law tort as it has developed. Those elements are: (1) the defendant has initiated a criminal proceeding; (2) which ended in the plaintiff's favor; (3) which was initiated without probable cause; and (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice. *Rose v. Bartle,* 871 F.2d at 349 (quoting *Lee v. Mihalich,* 847 F.2d 66, 70 (3d Cir.1988)).

fendants' motions for a more definite statement and will dismiss with prejudice all claims against the Erie Police Department.